**LUCIANO PISONI FABBRICA ACCESSORI INSTRUMENTI MUSICALI and Enzo Pizzi, Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 84–10–01435.

United States Court of International Trade.

June 12, 1986.

---

**18.** Apparently, joinder or substitution is more common than ratification. *Moore, supra,* ¶ 17.-

15–1 at 17–184.

Klayman & Gurley, P.C. (Larry Klayman and John Gurley), Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., Dept. of Justice (Elizabeth Seastrum; Edwin Madaj, Intern. Trade Com'n, Washington, D.C., of counsel), for defendant.

Mudge, Rose, Guthrie, Alexander & Ferdon (N. David Palmeter and Jeffrey Neeley) Washington, D.C., for amicus curiae Hyundai Steel Ind. Co., Ltd.

Dewey, Ballentine, Bushby, Palmer & Wood, (Alan Wm. Wolff, Jane Albrecht) and Akin, Gump, Strauss, Hauer & Feld, (Richard R. Rivers) Washington, D.C. for amicus curiae Lone Star Steel Co.

## Memorandum Opinion and Order

DiCARLO, Judge:

Plaintiffs, an Italian producer of woodwind instrument pads and its United States importer, challenge final affirmative determinations of the United States Department of Commerce, International Trade Administration (Commerce), *Pads for Woodwind Instrument Keys From Italy; Final Determination of Sales at Less Than Fair Value*, 49 Fed.Reg. 28295 (1984), and the International Trade Commission (Commission), *Pads for Woodwind Instrument Keys from Italy*, Inv. No. 731–TA–152 (Final), USITC Pub. 1566 (1984), 49 Fed.Reg. 34313 (1984), that resulted in an order assessing an antidumping duty of 1.16% *ad valorem* on woodwind instrument pads from Italy. 49 Fed.Reg. 37137 (1984).

Plaintiffs make four arguments challenging Commerce's determination that woodwind instrument pads are being sold in the United States at less than fair value. Since the Court holds that Commerce unreasonably failed to make a merchandise adjustment under 19 C.F.R. § 353.16, and that a dumping margin may not be found to exist as a result of currency changes, the dumping margin may be eliminated following remand. Therefore the Court does not address plaintiffs' contention that the Commission improperly disregarded the size of the margin in its material injury determination.

## I. Judicial Review

In reviewing an antidumping duty determination by Commerce, the standard of review is not *de novo*. Rather, the Court must hold unlawful any determination, finding, or conclusion found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1982). Under the substantial evidence standard for review of agency determinations, the Court must accept Commerce's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Federal Trade Commission v. Indiana Federation of Dentists,* —— U.S. ——, ——, 106

S.Ct. 2009, 2014, 90 L.Ed.2d 445 (U.S.1986). Substantial deference is granted to the agency in both its interpretation of its statutory mandate and the methods it employs in administering the antidumping law. *See American Lamb Co. v. United States,* 785 F.2d 994 (Fed.Cir.1986); *Carlisle Tire & Rubber Co. v. United States,* 9 CIT ——, 622 F.Supp. 1071 (1985).

## II. Commerce's Determination of Sales at Less than Fair Value

### A. *Commerce's Initiation of the Investigation*

■ Plaintiffs allege that the antidumping petition did not contain required price information and therefore should have been rejected by Commerce.

A petition must contain "information reasonably available to the petitioner supporting the allegations" of the "elements necessary for the imposition" of antidumping duties. 19 U.S.C. § 1673a(b)(1), (c)(1). A Commerce regulation, 19 C.F.R. § 353.-36(a)(7), says that petitions "shall contain":

All pertinent facts as to the price at which the foreign merchandise is sold or offered for sale in the United States and in the home market in which produced or from which exported ... and if appropriate, information regarding sales in third countries or the cost of producing the merchandise. Petitioners unable to furnish information on foreign sales or costs may present information concerning U.S. domestic producers' costs adjusted for differences in the foreign country in question from information publicly available.

The petition contained: (1) home market (Italian) price lists for plaintiffs' pads, in dollars, dated January 1, 1982; (2) export price lists for petitioner's pads, in lira, dated December 1, 1982; (3) estimated home market cost of production data based on petitioner's actual 1976 costs when it manufactured in Italy; and (4) petitioner's cost of production data, current to September, 1983.

Plaintiffs say the price lists were not a sufficient basis to initiate the investigation because they were "out-of-date, not in effect, and clearly inapplicable to the U.S. and Italian markets as alleged." Plaintiffs' Reply Brief at 6. Plaintiffs contend that the fact that the Italian prices were listed in dollars and the United States prices were listed in lira particularly rendered the price lists an insufficient basis to initiate the investigation.

Commerce says that although the price lists submitted by the petitioner were suspect (Commerce later determined the price lists were mislabeled), they provided an adequate basis to proceed since prices on both lists were less than petitioner's cost of production. Commerce also argues it was reasonable to initiate an investigation on the basis of a comparison of price lists allegedly from 1982 with petitioner's 1983 cost of production data.

■ Commerce interprets the statutory requirement that the petition contain only information "reasonably available to the petitioner" as permitting Commerce to accept petitions from small businesses with less information than would be acceptable in petitions from large businesses. The Court finds this interpretation consistent with the intent of Congress. *See* S.Rep. No. 96–249, 96th Cong., 1st Sess. 47, *reprinted in* 1979 U.S.Code Cong. & Ad. News 433.

■ Also, Commerce has some discretion in deciding whether to initiate an investigation; Commerce is permitted to assess the sufficiency of the petition "in light of its own knowledge and expertise" and facts capable of judicial notice. *United States v. Roses, Inc.,* 1 Fed.Cir. 39, 46, 706 F.2d 1563, 1568–69 (1983). However, Commerce may not, as plaintiffs argue, accept a letter from plaintiffs' counsel arguing against initiating the investigation. *Roses* prohibits Commerce from considering such communications during the 20–day period Commerce has to decide whether to begin an investigation after the filing of the petition under 19 U.S.C. § 1673a(c). Plaintiffs' suggestion that *Gilmore Steel Corp. v. United States,* 7 CIT 219, 585 F.Supp. 670 (1984), "limits" *Roses* is in error, since *Gilmore*

does not address preinitiation communications.

The Court holds that Commerce's decision to initiate the investigation was a "sufficiently reasonable" interpretation of the statute, *American Lamb Co. v. United States,* 4 Fed.Cir. ——, 785 F.2d 994, 995 (1986), and was in accordance with law.

### B. *Commerce's Continuation of the Investigation*

■ Plaintiffs argue that Commerce should have rescinded the notice initiating the investigation when it learned that the petitioner failed to provide accurate price information. During the investigation, Commerce determined that one of the price lists furnished by petitioner was effective from 1976 to early 1980 instead of 1982, as alleged. Plaintiffs argue that once this information was discovered there was no longer any basis to conduct the investigation, and the notice of initiation should have been rescinded.

The statutory scheme offers no basis for plaintiffs' position that Commerce is required to rescind a notice of initiation of an investigation upon discovering inaccuracies in a petition. Once Commerce has commenced an investigation, it is obligated to "make a determination, based upon the best information available to it at the time of the determination, of whether there is a reasonable basis to believe or suspect that the merchandise is being sold, or is likely to be sold at less than fair value." 19 U.S.C. § 1673b(b)(1) (1982). If the best information available, including the petition, affords no such reasonable basis, Commerce must make a negative preliminary determination of sales at less than fair value.

In making a final determination in an investigation, Commerce must verify all information on which it relies. 19 U.S.C. § 1677e (1982 & Supp. II 1984). Corrections to petitioners' data are the very point of verification procedures. It is therefore proper for Commerce to complete an investigation commenced after a petition is filed by an interested party even when a petition is found to contain inaccuracies. Since

Commerce is authorized to commence an antidumping duty investigation *sua sponte* whenever it determines that an investigation is warranted based upon available information, 19 U.S.C. § 1673a(a) (1982), it would be unreasonable to require that Commerce terminate an investigation commenced after the filing of a petition by an interested party when, despite inaccuracies contained in the petition, it finds evidence of sales at less than fair value.

Plaintiffs' reliance on *Gilmore Steel Corp. v. United States,* 7 CIT 219, 585 F.Supp. 670 (1984) is misplaced. In that case the domestic plaintiff challenged Commerce's authority to terminate an investigation after initiation. Two months after issuing an affirmative preliminary determination, Commerce said that it believed plaintiff did not have standing to file a petition on behalf of a United States industry, and that the investigation should not have been initiated. The Court affirmed the power of Commerce to terminate investigations where such a fundamental defect in the petition comes to its attention after expiration of the 20–day review period. The Court did not hold, as plaintiffs claim, that Commerce has an obligation to terminate investigations if it finds innaccuracies in a petition. The Court holds that Commerce's decision not to rescind the notice of initiation was in accordance with law.

### C. *Commerce's Comparison of the Merchandise*

■ Plaintiffs also claim that Commerce compared different merchandise without making necessary adjustments for the differences in the merchandise.

In both Italy and the United States the price of different size pads is determined by the average size of pads in particular size ranges. A Commerce investigator explained the situation as follows:

For example, the price for a 19mm saxophone pad when sold in Italy is based on the average size pad in the 14.5—20mm range, about 17.5mm. This same pad when sold in the U.S. falls in the 17.5–22mm range and thus its price is based

on the average for that range, about 20mm. On the other hand, the price for a 21mm saxophone pad in Italy is based on the average size for the 20.5–30mm range, about 26mm, while the price in the U.S. for this pad, based on the 20mm average for its size range, would be the same as for the 19mm pad.

The problem posed by this situation is that in comparing saxophone pads of the same size in these two markets, the facts that were the basis for the pricing decisions were different. In the above examples, a comparison of 19mm pads between Italy and the U.S. is in effect a comparison of the pricing decisions based on the costs of 17.5mm pads in Italy and 20mm pads in the U.S. A comparison of 21mm pads is a comparison of the pricing decisions based on the costs of 26mm pads in Italy and 20mm pads in the U.S.

R.Doc. 44, at 2–3.

Although Commerce said they compared the sales price of a particular pad size in the United States market with the sales price of the identical pad size in the home market, their comparison did not result, according to the investigator's report, in a comparison of identical pads sold in Italy and the United States. In its determination, Commerce said

We did not consider an attempt to restructure the home market pricing to be appropriate, since it resulted in an adjustment for what appeared to be [plaintiffs'] deliberate pricing strategy in each of the markets under review.

49 Fed.Reg. 28,295, 28,298.

Plaintiffs say that Commerce was required to make either a circumstances of sale or a merchandise adjustment to allow for the comparison of different size pads. A circumstances of sale adjustment is not warranted, since the differences in the ranges of pad sizes in the two markets is not a "selling cost" similar to "credit terms, guarantees, warranties, technical assistance, servicing, and assumption by a seller of a purchaser's advertising...." 19 C.F.R. § 353.15(b). However, the Court holds that a merchandise adjustment was required.

The Commerce regulation providing for adjustments for differences in physical characteristics in the merchandise, 19 C.F.R. § 353.16, provides in part:

In comparing the United States price with the selling price in the home market, or for exportation to countries other than the United States in the case of similar merchandise, due allowance shall be made for differences in the physical characteristics of the merchandise in the markets being compared. In this regard, the Secretary will be guided primarily by the differences in cost of production, to the extent that it is established to his satisfaction that the amount of any price differential is wholly or partly due to such differences, but, when appropriate, the effect of such difference upon the market value of the merchandise may also be considered.

Defendant does not argue that the ranges of pad sizes compared by Commerce were the same, but claims that Commerce has unlimited discretion to grant or deny merchandise adjustments under 19 C.F.R. § 353.13, which provides that any "person who alleges entitlement to any adjustment pursuant to sections 353.14 through 353.19 must establish entitlement thereto to the satisfaction of the Secretary." Defendant contends that plaintiffs failed to "establish a methodology which would permit the ITA to quantify the amount of such an adjustment." Defendant's Brief, at 39.

Commerce's discretion in making adjustments under 19 C.F.R. § 353.16 is not unlimited. Our appellate court has required that Commerce's decision whether to grant or to deny an adjustment under section 353.16 must be "reasonable." *Smith-Corona Group, Consumer Products Division, SCM Corp. v. United States*, 1 Fed.Cir. 130, 144–45, 713 F.2d 1568, 1582 (1983). Moreover, Commerce performed a verification of plaintiffs' cost of production, which could have provided a basis for a merchandise adjustment under section 353.16.

The Court will not instruct Commerce how to compensate for the physical differences in the compared merchandise. However, the Court holds that Commerce's comparison of pads without allowing for differences in the physical characteristics of the different ranges of pad sizes was unreasonable and not in accordance with law.

### D. Commerce's Currency Conversion Methodology

■ Finally, plaintiffs argue that Commerce is required to adopt a reasonable method of currency conversion for its ten home market sales during the period of investigation which does not create a dumping margin.

Plaintiffs say Commerce is obligated to do this for two reasons: (1) the purpose of the antidumping laws is to remedy unfair trade, not to punish foreign producers selling for less than United States producers, and (2) a Commerce regulation requires that differences between prices caused by currency fluctuations be disregarded. The regulation provides:

(b) *Special rules for fair value investigations.* For purposes of fair value investigations, manufacturers, exporters, and importers concerned will be expected to act within a reasonable period of time to take into account price differences resulting from sustained changes in prevailing exchange rates. *Where prices under consideration are affected by temporary exchange rate fluctuations, no differences between the prices being compared resulting solely from such exchange rate fluctuations will be taken into account in fair value investigations.* [Emphasis added].

19 C.F.R. § 353.56(b). *See Melamine Chemicals, Inc. v. United States,* 2 Fed. Cir. ——, 732 F.2d 924 (1984).

Defendant argues that Commerce properly applied the general rule for currency conversions under § 353.56(a), basing exchange rates on quarterly rates published by the Secretary of the Treasury as provided by 31 U.S.C. § 5151 (1982). But in *Melamine,* the government argued, and the Court held, that 31 U.S.C. § 5151 applies only to the assessment and collection of duties, not to less than fair value investigations. 31 U.S.C. § 5151 does not compel Commerce to use quarterly rates.

Defendant says use of some other currency conversion method was not required under section 353.56(b) since the value of the lira compared to the dollar did not "fluctuate" during the period under investigation, but rather declined steadily, which should have served to reduce rather than create a margin. Plaintiffs agree that the depreciation of the lira would effectively decrease any margin, but argue that they were not permitted to reap the benefit of the lira's decline since Commerce based its conversion calculations on the exchange rate that prevailed on the first day of each quarter rather than on the lower rates which existed on the dates of each transaction.

In *Melamine,* our appellate court held that it was in accordance with the intent of Congress and within the authority of Commerce to adopt rules which would take into account exchange rate variables rather than rely on a mechanical conversion formula in determining dumping margins in less than fair value investigations:

The purpose of the antidumping law, as its name implies, is to discourage the practice of selling in the United States at LTFV by the imposition of appropriately increased duties. That purpose would be ill-served by application of a mechanical formula to find LTFV sales, and thus a violation of the antidumping laws, where none existed. A finding of LTFV sales based on a margin resulting *solely* from a factor beyond the control of the exporter would be unreal, unreasonable, and unfair.

732 F.2d at 933 (emphasis in original).

It is not reasonable for Commerce to find dumping by a firm with only ten relevant home market sales during the period of the investigation solely because of Commerce's use of quarterly exchange rates. In this case the purpose of the antidumping laws

would be violated if Commerce found a dumping margin based on the use of quarterly rates, while no margin would result if Commerce were to use the rates prévailing at the time of transactions.

At oral argument, the Court asked defendant whether the dumping margin of 1.16% would be reduced or eliminated if the exchange rates prevailing on the dates of the transactions had been used. Defendant filed with the Court a recalculation of the margin indicating that the margin would be .698%. Plaintiffs filed a motion to strike these calculations, objecting to the form and to alleged errors in the calculations. In response, defendant corrected one of the alleged errors, lowering the margin to .697. Since the Court orders the case remanded to Commerce on the merchandise adjustment issue, plaintiffs' motion to strike the calculation is denied as moot. Plaintiffs will be afforded an opportunity to comment on the results of the remand. *See Carlisle Tire & Rubber Co. v. United States,* 5 CIT 229, 564 F.Supp. 834 (1983).

### III. Conclusion

The case is remanded to Commerce for action consistent with this opinion. Commerce will supplement the record and file in the Court its redetermination within 45 days from the issuance of this memorandum opinion and order. Plaintiffs will file any comments on the results of the remand within 15 days of the filing of Commerce's redetermination, and defendant will respond within 10 days of the filing of plaintiffs' comments.

So ordered.