**LUCIANO PISONI FABBRICA ACCESSORI INSTRUMENTI MUSICALI, and Enzo Pizzi, Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Court No. 84–10–01435.**

United States Court of International Trade.

April 9, 1987.

Klayman & Gurley, P.C., Larry Klayman and John Gurley, Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., Dept. of Justice (Elizabeth Seastrum, Edward Madaj, Intern. Trade Comn, Washington, D.C., of counsel), for defendant.

MEMORANDUM OPINION
AND ORDER

DiCARLO, Judge:

Plaintiffs, Luciano Pisoni Fabbrica Accessori Instrumenti Musicali and Enzo Pizzi, Inc. seek attorney's fees and other expenses incurred in their action challenging an antidumping duty order on pads for woodwind instrument keys from Italy. Plaintiffs make their application for such fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (1982 & Supp. III 1985) pursuant to Rule 68 of the rules of this Court. The Court denies plaintiffs' application, holding that under the standard governing

EAJA awards the position of Commerce in reaching the final affirmative determination leading to issuance of the antidumping duty order was substantially justified.

### Background

On September 12, 1984, the United States Department of Commerce, International Trade Administration (Commerce) published the antidumping duty order challenged by plaintiffs. *See Pads for Woodwind Instrument Keys From Italy; Antidumping Duty Order,* 49 Fed.Reg. 37,137 (1984). Plaintiffs timely filed their complaint, contesting the final determinations by Commerce and the United States International Trade Commission (Commission) underlying the antidumping duty order.

Commerce had issued an affirmative final determination pursuant to section 735(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673d(a) that pads for woodwind instrument keys from Italy were being sold in the United States at less than fair value. *Pads for Woodwind Instrument Keys From Italy; Final Determination of Sales at Less Than Fair Value,* 49 Fed.Reg. 28,295 (1984). The Commission had issued a final affirmative injury determination pursuant to section 1673d(b) that the United States industry was materially injured by reason of imports of these pads. *Pads for Woodwind Instrument Keys from Italy,* Inv. No. 731–TA–152 (Final), USITC Pub. 1566, 49 Fed.Reg. 34,313 (1984).

Plaintiffs filed a motion for judgment upon the agency record pursuant to Rule 56.1 of the Rules of this Court, challenging both the Commerce and Commission determinations. With regard to Commerce, plaintiffs contested (1) the initiation of the antidumping investigation; (2) the continuation of the antidumping investigation; (3) the method of comparing the prices of pads from varying size ranges; and (4) the methodology employed for currency conversion. With regard to the Commission, plaintiffs argued that it improperly disregarded the size of the margin in its material injury determination.

Shortly after oral argument, at the Court's request, Commerce submitted re-calculations showing that the use of daily exchange rates for currency conversions rather than quarterly rates would not in and of itself have resulted in a negative determination. Plaintiffs moved to strike these recalculations.

On June 12, 1986, the Court issued an opinion remanding the action to Commerce. *See Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States,* 10 CIT ——, 640 F.Supp. 255 (1986). In that opinion, the Court sustained Commerce's decision to initiate and to continue the investigation. The Court further held that a merchandise adjustment pursuant to 19 C.F.R. § 353.16 was required to allow for differences in the physical characteristics of the different ranges of pads compared for pricing purposes and that Commerce had to use daily exchange rates rather than quarterly exchange rates in making currency conversions for this investigation. The Court also denied plaintiffs' motion to strike the recalculations as moot, because plaintiffs could make necessary comments to the remand results. The Court declined to decide the issue involving the Commission, since upon remand the margin might be eliminated.

On remand Commerce made a merchandise adjustment under 19 C.F.R. § 353.16 and used daily exchange rates for all lira/dollar conversions. Based on new calculations, Commerce found the weighted-average dumping margin to be *de minimis* and concluded that the merchandise was not being sold in the United States at less than fair value.

In an opinion and order issued on September 15, 1986, the Court affirmed the remand results of Commerce and dismissed the action. *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States,* 10 CIT ——, 645 F.Supp. 956 (1986). Commerce then issued a notice of partial revocation of the antidumping duty order, resulting in a revocation of that order with respect to plaintiffs. *See Pads for Woodwind Instrument Keys From Italy; Partial Revocation of Antidumping Duty Order,* 51 Fed.Reg. 40,239 (1986).

Plaintiffs filed an application for attorney's fees and expenses on October 15, 1986. The Court accepted an amendment to this application filed December 4, 1986 during a phone conference involving all parties held on December 10, 1986. Defendant responded to both the original and amended application.

### Opinion

The Court first must address defendant's contention that plaintiffs are not entitled to attorney's fees and expenses under the EAJA because the original application submitted by plaintiffs on October 15th was statutorily deficient. Defendant stresses that the original application lacked both the itemized statement, required by 28 U.S.C. § 2412(d)(1)(B), and the information necessary for a proper determination of plaintiffs' eligibility under 28 U.S.C. § 2412(d)(2)(B).

The Court agrees that the application as originally filed on October 15th was deficient in the information necessary for a proper application under the EAJA. The Court need not determine in this action whether the failure to strictly comply with the statutory requirements results in the untimely submission of an EAJA application, because plaintiffs' amended application was also timely filed.

■ The EAJA statute provides that a party has 30 days from the date of entry of a final judgment to file an application, defining "final judgment" as "a judgment that is final and not appealable. . . ." 28 U.S.C. § 2412(d)(1)(B) and (d)(1)(C), (2)(G). An appeal to the Federal Circuit from a judgment entered by the Court of International Trade when the United States is a party must be filed within 60 days of entry of the judgment. Fed.Cir.R. 10(a)(1); Fed. R.App.P. 4(a). Plaintiffs thus had 90 days from the entry of the September 15th judgment entered by this Court in which to file a proper application under the EAJA requirements. *See, e.g., Gavette v. Office of Personnel Management*, 808 F.2d 1456, 1459 (Fed.Cir.1986) (finding time for filing petition for certiorari did not expire until 90 days after entry of judgment giving applicant a total of 120 days from entry of

judgment in which to file EAJA application for fees and expenses).

Pursuant to the discretion afforded to it by part (c) of Rule 68, the Court accepted the supplemental information filed by plaintiffs on December 4th as an amendment to the original application. As timely amended within the 90 day limit, plaintiffs' application contains the itemized statement required by 28 U.S.C. § 2412(d)(1)(B), and based upon other amendment information defendant concedes that plaintiffs meet the eligibility criteria of the EAJA for purposes of 28 U.S.C. § 2412(d)(2)(B).

Having found that plaintiffs have submitted a valid application, the Court must determine if this is a proper case for an award of attorney's fees and other expenses under the EAJA. The relevant section of the EAJA provides that the court "shall" award fees and expenses unless "the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

In the recent *Gavette* decision, our appellate Court discussed the standard for evaluating an EAJA claim, stating:

> We hold that "substantial justification" requires that the Government show that it was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts. The Government must show that it has not "persisted in pressing a tenuous factual or legal position, albeit one not wholly without foundation." It is not sufficient for the Government to show merely "the existence of a colorable legal basis for the government's case." (Emphasis in original) (footnotes omitted).

*Gavette*, 808 F.2d at 1467.

Plaintiffs assert that the position of the United States was not substantially justified, arguing that in reaching the final determination Commerce did not make the required adjustments for differences in the merchandise or adopt a proper method for currency conversion. To support their claim, plaintiffs quote from the Court's

opinion of June 12, 1986 where the Court held that the actions taken by Commerce were unreasonable and not in accordance with law. Plaintiffs suggest that Commerce cannot be clearly reasonable in the position it took when the Court has determined that such action was unreasonable.

In the earlier opinion on the merits, the Court applied the substantial evidence standard for review of agency determinations provided in 19 U.S.C. § 1516a(b)(1)(B) (1982). Under a substantial evidence standard, the Court must accept Commerce's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Federal Trade Commission v. Indiana Federation of Dentists,* — U.S. ——, 106 S.Ct. 2009, 2015, 90 L.Ed.2d 445 (1986). The Court will reverse action taken by Commerce, therefore, if such action is determined by the Court to be unreasonable.

■ Plaintiffs' argument suggests that the Court of International Trade must award attorney's fees and expenses under the EAJA to all qualified applicants who successfully challenge agency action governed by the substantial evidence standard of review. The EAJA supplies the legal standard of substantial justification, however, which is a distinct standard of review apart from whatever standard is applicable to the underlying decision on the merits. By providing a separate legal standard Congress sought to avoid automatic fee-shifting in favor of a case-by-case analysis on the basis of the record. *See Gavette,* 808 F.2d at 1467. In light of this separate standard of review, the Court concludes that Congress intended that an analysis under an EAJA perspective be independent from the decision on the merits. *See Federal Election Comm'n v. Rose,* 806 F.2d 1081, 1086–90 (D.C.Cir.1986).

An independent analysis employing EAJA principles can result in a finding that the position of the United States at the litigation stage and the agency level was substantially justified despite a finding on the merits that the agency action must be reversed because it was unreasonable.

The Court is not persuaded that the remark in the House Report, H.R.Rep. No. 120, 99th Cong., 1st Sess. 9–10 (Pt. I 1985), *reprinted in* 1985 U.S.Code Cong. & Ad. News 132, 138, that "[a]gency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act" prevents such result. The *Rose* Court found this statement to be an unsupported, offhand generalization which does not prevent independent analysis resulting in a denial of attorney's fees and expenses even where the underlying agency action is found on the merits to be arbitrary and capricious. 806 F.2d at 1089–90.

It is consistent with the intent of the EAJA and its legislative history for a court to conclude that the action taken by the agency at the time was clearly reasonable even though such action is later found to be unreasonable after having run the gamut of the legal process. This is especially true in antidumping and countervailing duty investigations where Commerce and the Commission often must make novel interpretations based upon facts unique to the particular industry at the relevant time.

■ As discussed in the earlier opinion, the issue concerning a need for a merchandise adjustment arose because plaintiffs' pads were priced by size range rather than the assignment of a set price to each particular pad size. Plaintiffs used ranges for the pads sold in Italy which did not always correspond to the ranges it used for pads sold in the United States. As a result, Commerce's comparison of the sales price for a particular pad size sold in one market could lead to the pairing of prices from disparate size ranges.

Commerce chose not to make a merchandise adjustment to compensate for this possible disparity. Commerce exercised the discretion afforded it under regulation 19 C.F.R. § 353.16 in not making a merchandise adjustment, contending that this was a deliberate pricing strategy in the markets under review that did not warrant a restructuring of the home market pricing. Evaluating the alternative pricing method

offered by plaintiffs, Commerce stated that "[a]lthough we considered restructuring the home market size ranges and associating weighted-average prices with the new range based on price increments among the existing size ranges, we ultimately disregarded this alternative in favor of the more straightforward approach of simply comparing the sales price of a particular pad size in the U.S. market with the sales price of the identical pad size and model in the home market." 49 Fed.Reg. at 28,198.

In its opinion, the Court found that Commerce did not have unlimited discretion in deciding whether to make adjustments under regulation 353.16. The Court was persuaded that a merchandise adjustment was required in this investigation partly because Commerce had verified cost of production data from which to make such adjustment.

On remand, however, Commerce stated that it did not have cost of production data on record for the Italian home market pad size ranges. Plaintiffs had supplied such information pertaining only to average pad sizes in the United States ranges. Commerce thus estimated costs of average pad sizes in the Italian market by averaging the averages of the United States average pad sizes immediately above and below the average home market pad size on a proportionate basis with each different material component. These estimates resulted in an artificial adjustment for differences in the pad pricing that cannot be totally verified.

The Court maintained that Commerce was required to make this merchandise adjustment. In light of the difficulty and inconclusiveness of the remand results, the Court finds that Commerce's decision not to make a merchandise adjustment in reaching a final affirmative determination was clearly reasonable in light of the law, regulations and facts as they existed at the time. Commerce in this novel and complex matter has not "persisted in pressing a tenuous factual or legal position." *Gavette*, 808 F.2d at 1467.

A similar analysis under EAJA principles applies to the currency conversion issue. Pursuant to regulation 19 C.F.R. § 353.56, Commerce elected to use quarterly conversion rates rather than daily rates. Commerce considered whether the special provision of the regulation was applicable, which states:

(b) *Special rules for fair value investigations.* For purposes of fair value investigations, manufacturers, exporters, and importers concerned will be expected to act within a reasonable period of time to take into account price differences resulting from sustained changes in prevailing exchange rates. Where prices under consideration are affected by temporary exchange rate fluctuations, no differences between the prices being compared resulting solely from such exchange rate fluctuations will be taken into account in fair value investigations.

19 C.F.R. § 353.56(b).

Commerce distinguished plaintiffs situation reasoning that (1) the movement of the exchange rate during the period of investigation served to reduce margins of less than fair value rather than to create margins; (2) the steady movement of the exchange rate did not constitute the temporary fluctuations envisioned by the regulation, showing instead a constant, non-volatile progression downward; and (3) the exporter did not act within a reasonable period of time to take into account the price differences resulting from sustained changes in the prevailing rates. 49 Fed. Reg. at 28,297.

Commerce set forth reasons why it distinguished the only applicable judicial decision, *Melamine Chemicals, Inc. v. United States*, 2 Fed.Cir. 57, 732 F.2d 924 (1984):

Regarding the appeals court decision on melamine from the Netherlands, it is abundantly clear that the court was concerned with temporary and volatile exchange fluctuations occurring during the period of investigation that created margins which would not have otherwise existed. Under these conditions, the court approved the use of exchange rates in effect during an earlier more stable period. The exchange rate behaviour in our present investigation differs markedly from that in melamine and, as stated

earlier, tends to reduce rather than create margins.

49 Fed.Reg. at 28,298.

In reaching its opinion of June 12, 1986, the Court recognized that Commerce might have grounds for distinguishing plaintiffs' situation from regulation 353.56(b) and the *Melamine* decision. The Court was concerned, on the other hand, that in this particular situation, where only ten home market sales were involved, the failure to use daily rates could in combination with the failure to make a merchandise adjustment lead to a result that violated the purpose of the antidumping laws. The Court found it would not be reasonable for Commerce to find a dumping margin in this situation "solely" because of the use of quarterly exchange rates and remanded the action.

Commerce may not have been aware that the use of quarterly rates rather than daily rates could cause such an incongruous result, since the recalculations made at the Court's requests following oral argument indicated that without a merchandise adjustment a dumping margin would still exist using daily exchange rates. At the time Commerce made its choice to use quarterly rates, the Court finds that it was clearly reasonable to distinguish the facts as presented by plaintiffs from those necessary for invoking regulation 353.56(b). The Court is persuaded that in this evolving area of the antidumping laws Commerce did not persist in pressing a tenuous factual or legal position.

### Conclusion

The Court holds that under the standard governing EAJA awards the action taken by Commerce in reaching the final affirmative determination was substantially justified. Plaintiffs' application for attorney's fees and expenses is denied.

So ordered.