**LUCIANO PISONI FABBRICA ACCESSORI INSTRUMENTI MUSICALI and Enzo Pizzi, Inc., Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 87–1344.**

United States Court of Appeals, Federal Circuit.

Jan. 20, 1988.

John Gurley, Klayman & Gurley, Washington, D.C., argued for plaintiffs-appellants. With him on the brief were Larry Klayman, Washington, D.C., and Michael Diedring.

Elizabeth C. Seastrum, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Velta A. Melnbrencis, Asst. Director, New York City. Also on the brief were Douglas A. Riggs, Gen. Counsel, M. Jean Anderson, Chief Counsel for Intern. Trade and Paul C. Aiken, Atty.–Advisor, Office of the Deputy Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., of counsel.

Before NIES, BISSELL, and MAYER, Circuit Judges.

MAYER, Circuit Judge.

## OPINION

This appeal is from an order of the United States Court of International Trade denying an application for attorney fees and other expenses under the Equal Access to Justice Act because the position of the United States was substantially justified. We affirm.

### Background

On September 12, 1984, the Department of Commerce (Commerce) issued an antidumping order on pads for woodwind instrument keys from Italy. 49 Fed.Reg. 37,137. Appellants, Luciano Pisoni Fabbrica Accessori Instrumenti Musicali and Enzo Pizzi, Inc. (collectively Pisoni), are respectively the Italian producer and American importer of these pads. In the Court of International Trade, they contested the final determinations of Commerce and the International Trade Commission which provided the bases for the antidumping order.

The court upheld Commerce's decision to initiate and continue the antidumping investigation, but it determined "that Commerce's comparison of pads without allowing for differences in the physical characteristics of the different ranges of pad sizes was unreasonable and not in accordance with law." It remanded for a merchandise adjustment under 19 C.F.R. § 353.16. *Luciano Pisoni Fabbrica Accessori v. United States*, 640 F.Supp. 255, 260 (CIT 1986). The court also determined that Commerce should have used daily exchange rates in its currency conversion methodology, saying, "It is not reasonable for Commerce to find dumping by a firm with only ten relevant home market sales during the period of the investigation solely because of Commerce's use of quarterly exchange rates." *Id.*

On remand, after making the merchandise adjustment and applying daily exchange rates, Commerce concluded that the dumping margin was de minimis and that the pads were not being sold at less than fair value in the United States. The court affirmed and dismissed the case, *Luciano*

*Pisoni Fabbrica Accessori v. United States*, 645 F.Supp. 956, 957 (CIT 1986), and Commerce revoked the part of the antidumping order which applied to appellants' pads. 51 Fed.Reg. 40,239.

Pisoni then applied for attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). The court declined to award them because it found that the government's actions were substantially justified. *Luciano Pisoni Fabbrica Accessori v. United States*, 658 F.Supp. 902, 907 (CIT 1987). Here on appeal, Pisoni contends it should have the award under the EAJA because Commerce's merchandise comparison and exchange rate conversion methodologies were determined by the Court of International Trade to be unreasonable and could not therefore be considered substantially justified.

### Discussion

Under the EAJA "a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). This court has defined "substantially justified" to require "that the Government show that it was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts." *Gavette v. Office of Personnel Management*, 808 F.2d 1456, 1467 (Fed.Cir.1986) (in banc).

Because the Court of International Trade concluded Commerce's methodology for comparing the pads was "unreasonable," and instructed the department to use a different currency conversion method, Pisoni argues that the actions cannot be considered "clearly reasonable" for purposes of the EAJA. In Pisoni's view, if the government's position is unreasonable on the merits, it is unreasonable period, and the court should order the government to pay its attorneys.

This view ignores the differences between the trial court's inquiries on the merits and on the fee application. The first inquiry led to a legal conclusion derived from statutory standards; the other to a factual one. In reviewing an antidumping proceeding, the Court of International Trade will "hold unlawful any determination, finding, or conclusion found ... to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1). When the court said Commerce's merchandise comparison methodology was "unreasonable," it was using a shorthand word for unsupported by substantial evidence on the record. *See F.T.C. v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35, 44 (D.C. Cir.1985); *SSIH Equip. S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 381, 218 USPQ 678, 691 (Fed.Cir.1983) (Nies, J., additional views) ("supported by substantial evidence" raises the question: Is a finding of fact "unreasonable"?); *cf. Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); *Fischer & Porter Co. v. United States Int'l Trade Comm'n*, 831 F.2d 1574, 1577, 4 USPQ2d 1700, 1701 (Fed.Cir.1987). Similarly, its conclusion that a dumping determination based solely on the use of quarterly exchange rates was "not reasonable" means unsupported by substantial evidence or otherwise not in accordance with law. We say this because the court decided the case in accordance with that statutory formula, regardless of the words chosen to announce its conclusion.

Notwithstanding that in this court substantial justification under the EAJA requires that the government's position be "clearly reasonable," a conclusion on the underlying merits that its actions were unreasonable because unsupported by substantial evidence or not in accordance with law as contemplated by section 1516a(b)(1) is not the end of the inquiry. "[T]he EAJA was not intended to be an automatic fee-shifting device in cases where the petitioner prevails.... [S]ubstantial justification is to be decided case-by-case on the basis of the record." *Gavette*, 808 F.2d at 1467. "The mere fact that the United States lost the case does not show that its position in defending the case was not substantially justified." *Broad Ave. Laundry & Tailoring v. United States*, 693 F.2d 1387, 1391 (Fed.Cir.1982). The decision on an award of attorney fees is a judgment independent of the result on the merits, and is reached by examination of the government's position and conduct through the EAJA "prism," *see Federal Election Comm'n v. Rose*, 806 F.2d 1081, 1090 (D.C.Cir.1986), not by redundantly applying whatever substantive rules governed the underlying case.

But Pisoni cites a congressional statement which says, "Agency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the [EAJA]." H.R.Rep. No. 120, 99th Cong., 1st Sess. 9 (Pt. I 1985), *reprinted in* 1985 U.S.Code Cong. & Ad. News 132, 138. We agree with the D.C. Circuit that this is "spurious legislative history, as evidenced by renunciations of this precise statement in both Houses." *Rose*, 806 F.2d at 1090. This language does not prevent the denial of attorney fees and expenses where the underlying agency action is found to be unsupported by substantial evidence or otherwise not in accordance with law. Those are legal conclusions pursuant to separate substantive standards, which may cover a range of egregiousness, and would be reviewed as such. Under the EAJA, we review the trial court's finding that the government's position was substantially justified under the clearly erroneous standard because that is a factual decision. *Essex Electro Engineers, Inc. v. United States*, 757 F.2d 247, 253 (Fed.Cir.1985); *Alger v. United States*, 741 F.2d 391, 394 (Fed.Cir.1984).

In deciding the department's merchandise comparison and exchange rate conversion activities were substantially justified, the court analyzed the government's arguments in light of the complexity, uniqueness, and newness of the issues and the availability of certain cost of production data. It came to a factual conclusion about the reasonableness of the government's po-

sition, which included an assessment that the government's legal arguments were tenable. We can overturn this only if it is clearly erroneous.

Pisoni argues that the dumping determination was not substantially justified because Commerce compared different groups of merchandise without making necessary adjustments for differences in the merchandise. This problem arose because Pisoni did not price its pads by specific size but by the average size of pads in a particular range of sizes. The size ranges for the pads sold in Italy, moreover, did not always correspond to the ranges used for the sale of these pads in the United States. Therefore, although Commerce said it was comparing the identical pad sizes sold in Italy with those sold in the United States, as a result of Pisoni's peculiar pricing and sizing practices, identical pads were not compared.

A Commerce regulation provides, in pertinent part:

> In comparing the United States price with the selling price in the home market, ... due allowance shall be made for differences in the physical characteristics of the merchandise in the markets being compared. In this regard, the Secretary [of Commerce] will be guided primarily by the differences in cost of production, to the extent that it is established to his satisfaction that the amount of any price differential is wholly or partly due to such differences, but, when appropriate, the effect of such difference upon the market value of the merchandise may also be considered.

19 C.F.R. § 353.16. Commerce decided against making a merchandise adjustment and provided this rationale:

> Although we considered restructuring the home market size ranges and associating weighted-average prices with the new ranges based on price increments among the existing size ranges, we ultimately disregarded this alternative in favor of the more straightforward approach of simply comparing the sales price of a particular pad size in the U.S. market with the sales price of the identi-

cal pad size and model in the home market. We did not consider an attempt to restructure the home market pricing to be appropriate, since it resulted in an adjustment for what appeared to be respondent's deliberate pricing strategy in each of the markets under review.

49 Fed.Reg. 28,295, 28,298. The court disagreed, however, and held that Commerce does not have unlimited discretion in deciding whether to make merchandise adjustments under section 353.16. 640 F.Supp. at 259. It thought "that a merchandise adjustment was required in this investigation partly because Commerce had verified cost of production data from which to make such an adjustment." 658 F.Supp. at 906.

In fact, Commerce did not have cost of production data for the relevant pads from Italy; Pisoni had only submitted it for the average pad sizes in the United States' ranges. As a result, on remand Commerce had to estimate the cost of average pad sizes in Italy in a manner that was of questionable accuracy. *Id.* In what it characterized as a "novel and complex matter," the court found that the merchandise adjustment was both difficult to compute and ultimately inconclusive. Commerce considered the issues in a thoughtful and thorough manner. Under the circumstances, we see no error in the court's finding that Commerce was clearly reasonable in deciding not to make a merchandise adjustment.

Pisoni also contends that Commerce's use of quarterly instead of daily exchange rates was "skewed and improper" and violated the guidelines of *Melamine Chemicals, Inc. v. United States*, 732 F.2d 924 (Fed.Cir.1984). On the merits, the court said, "It is not reasonable for Commerce to find dumping by a firm with only ten relevant home market sales during the period of the investigation solely because of Commerce's use of quarterly exchange rates." 640 F.Supp. at 260.

Commerce elected to use quarterly exchange rates pursuant to 19 C.F.R. § 353.56(a). Subsection (b), an exception to subsection (a), *Melamine Chemicals*, 732 F.2d at 929, provides:

*Special rules for fair value investigations.* For purposes of fair value investigations, manufacturers, exporters, and importers concerned will be expected to act within a reasonable period of time to take into account price differences resulting from sustained changes in prevailing exchange rates. *Where prices under consideration are affected by temporary exchange rate fluctuations, no differences between the prices being compared resulting solely from such exchange rate fluctuations will be taken into account in fair value investigations.* [Emphasis added.]

Subsection (b) "establishes a 'special rule' applicable only to those abnormal situations in which an *artificial* margin is caused *solely* by rapidly fluctuating, temporary exchange rates." *Melamine Chemicals,* 732 F.2d at 929.

Commerce considered the applicability of this subsection and *Melamine Chemicals* and decided they did not control the problem presented. In distinguishing subsection (b), it reasoned that (1) the exchange rate fluctuation reduced rather than created less than fair value margins; (2) the exchange rate declined in a constant and nonvolatile fashion which could not be considered a temporary fluctuation as contemplated by this subsection; and (3) the exporter failed to act within a reasonable time to take into account the differences in price resulting from the sustained changes in the prevailing rates. 49 Fed.Reg. at 28,297; *see* 658 F.Supp. at 906.

Commerce also distinguished *Melamine Chemicals,* the only case involving a currency conversion question, by noting:

Regarding the appeals court decision on melamine from the Netherlands, it is abundantly clear that the court was concerned with temporary and volatile exchange rate fluctuations occurring during the period of investigation that created margins which would not have otherwise existed. Under these conditions, the court approved the use of exchange rates in effect during an earlier more stable period. *The exchange rates behavior in our present investigation dif-*

*fers markedly from that in melamine and, as stated earlier, tends to reduce rather than create margins.*

49 Fed.Reg. at 28,298 (emphasis added).

The court recognized this as a transaction in an "evolving area of the antidumping laws" and that Commerce "might have grounds" for distinguishing this situation from 19 C.F.R. § 353.56(b) and *Melamine Chemicals,* 658 F.Supp. at 907. Commerce carefully considered the issues here and provided reasonable explanations for its approach. The correctness of its position on the merits is not before us, and we intimate no view on that. But even though the decision went against the government, the trial court concluded it did not persist in pressing a tenuous factual or legal position. *Gavette,* 808 F.2d at 1467. Apart from Pisoni's attempted equation of the government's loss on the merits with its entitlement to fees and expenses, nothing was argued to us that would suggest the court was wrong in this assessment.

### Conclusion

Accordingly, the Court of International Trade's denial of Pisoni's application for attorney fees and expenses under the EAJA is

AFFIRMED.