**Slip Op. 99-143**

# UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____        :
                                           :
FERRO UNION, INC. AND                      :
     ASOMA CORPORATION,                    :
                                           :
          Plaintiffs,                      :
                                           :
     v.                                    :
                                           :
THE UNITED STATES,                         :   Court No. 97-11-01973
                                           :
          Defendant,                       :
                                           :
     and                                   :
                                           :
WHEATLAND TUBE COMPANY,                    :
                                           :
          Defendant-Intervenor.           :
_____        :
```

[Application for attorney's fees and expenses denied.]

Dated: December 30, 1999

Mayer, Brown & Platt (Simeon M. Kriesberg, Carol J. Bilzi, Peter C. Choharis, and Andrew A. Nicely) for plaintiffs.

David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Michele D. Lynch), Brian Peck, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

## OPINION

**RESTANI, Judge:** This matter concerns plaintiffs' application for attorney's fees and expenses pursuant to USCIT R. 68 and the Equal Access to Justice Act ("EAJA"), 28 U.S.C.A. § 2412

(West Supp. 1999).[1]  Plaintiffs, Ferro Union and Asoma Corporation, Inc. ("Asoma"), allege that the position of defendant, the Department of Commerce ("Commerce") in Ferro Union, Inc. v. United States, 44 F. Supp.2d 1310 (Ct. Int'l Trade 1999), and in Certain Welded Carbon Steel Pipes and Tubes from Thailand, 62 Fed. Reg. 53,808 (Dep't Commerce 1997) (final results of antidumping duty admin. rev.) [hereinafter "Final Results"], was not "substantially justified" within the meaning of the EAJA. Asoma seeks an award of $250,633.78, which is one half of the attorney's fees and expenses incurred by plaintiffs.  Plaintiffs admit that Ferro Union is not entitled to an EAJA fee award because it had a total net worth of more than $7,000,000.  Pls.' Br. at 2 n.1; see also 28 U.S.C.A. § 2412(d)(2)(B)(ii) (defining "party" for purposes of EAJA as a business whose net worth does not exceed $7,000,000 at the time of the civil action).  Thus, fees are requested for Asoma only.  For purposes of this opinion, the court will briefly review the facts of this case, but the court assumes familiarity with its earlier opinions, both Ferro Union, 44 F. Supp.2d 1310 and the opinion pursuant to remand, Ferro Union,

---

[1]  The EAJA applies to actions in this court. Consolidated Int'l Automotive, Inc. v. United States, 16 CIT 692, 692 n.1, 797 F. Supp. 1007, 1008 n.1 (1992) (citation omitted).

Inc. v. United States, No. 97-11-01973, 1999 WL 825584 (Ct.
Int'l Trade Oct. 6, 1999).

**Background**

On April 1, 1996, Ferro Union and Asoma, along with Saha
Thai Steep Pipe Co., Ltd. ("Saha Thai"),[2] requested a review
of the 1986 antidumping duty order on welded carbon steel
pipes and tubes from Thailand.  Ferro Union, 44 F. Supp.2d at
1313.  Commerce initiated the review on April 25, 1996, for
the period March 1, 1995 through February 29, 1996.
Initiation of Antidumping and Countervailing Duty
Administrative Reviews, 61 Fed. Reg. 18,378, 18,378-79 (Dep't
Commerce 1996).  In both its preliminary results and final
results, Commerce determined that an application of total
adverse facts available, pursuant to 19 U.S.C. § 1677e (1994),
was warranted because of Saha Thai's failure to provide
complete information on affiliates.  See Certain Welded Carbon
Steel Pipes and Tubes from Thailand, 62 Fed. Reg. 17,590,
17,592 (Dep't Commerce 1997) (preliminary results of
antidumping duty admin. rev.); Final Results, 62 Fed. Reg. at
53,809-10.  Ferro Union and Asoma challenged the Final Results
in this court.  In Ferro Union the court upheld Commerce's

---

[2]  Ferro Union and Asoma are U.S. importers of Saha Thai
pipe.

determination to continue with the review, despite Saha Thai's request for termination. <u>Ferro Union</u>, 44 F. Supp.2d at 1317. The court also upheld Commerce's interpretation of the terms "family" and "control" listed in the definition of "affiliated persons" in 19 U.S.C. § 1677(33) (1994). <u>Id.</u> at 1324-26. The court remanded several other issues. Specifically, the court found that although Commerce's interpretation of "family" was permissible, it was improperly applied because Commerce failed to provide the respondent with complete notice of the agency's interpretation of the term. <u>Id.</u> at 1325-26. The court therefore instructed Commerce to ignore any possible affiliation Saha Thai may have had with two particular Thai companies, and to substantiate its conclusion that Saha Thai should have disclosed affiliations with five other companies. <u>Id.</u> at 1331. The court also required Commerce to revisit its procedure for applying total adverse facts available. <u>Id.</u> at 1330-32. After remand, Commerce chose a smaller margin based on partial adverse facts, and the court upheld the remand results. <u>Ferro Union</u>, 1999 WL 825584, at *6-7.

## Discussion

The EAJA is a statute which authorizes the recovery of attorney's fees and expenses from an agency of the United States. It constitutes a waiver of sovereign immunity which

must be strictly construed.  United States v. Modes, Inc., 18

CIT 153, 154 (1994) (citation omitted).  The EAJA provides in

relevant part:

> [A] court shall award to a prevailing party other than
> the United States fees and other expenses . . . incurred
> by that party in any civil action . . . including
> proceedings for judicial review of agency action, brought
> by or against the United States in any court having
> jurisdiction of that action, unless the court finds that
> the position of the United States was substantially
> justified or that special circumstances make an award
> unjust.

28 U.S.C.A. § 2412(d)(1)(A).  The court must therefore

determine whether the party seeking the award is a "prevailing

party" and whether the government's position was

"substantially justified" at both the administrative level and

litigation stage.  See Urbano v. United States, 15 CIT 639,

641, 779 F. Supp. 1398, 1401 (1991) ("government's position

must be substantially justified at both the agency level and

litigation stage.") (citation omitted).

A prevailing party is one who "'succeed[s] on any

significant issue in litigation which achieves some of the

benefit the part[y] sought in bringing suit.'"  Modes, 18 CIT

at 155 (quotation omitted).  The government does not challenge

Asoma's assertion that it was the prevailing party in this

action.  Although not all of plaintiffs' challenges were

successful,[3] in the light of the fact that plaintiffs ultimately were successful as to at least one major issue and in having the 29.89 percent dumping margin from the Final Results reduced substantially to 9.52 percent, the court agrees that Asoma is a prevailing party for purposes of the EAJA.

Plaintiffs assert that Commerce's position was not substantially justified at either the administrative level or in the litigation before this court.  Plaintiffs argue that Commerce misapplied the statutory provisions regarding the application of total adverse facts available, and that the government ignored this court's reasoning in Borden, Inc. v. United States, 4 F. Supp.2d 1221 (Ct. Int'l Trade 1998) in defending Commerce's application of total adverse facts available.  The government counters that its position was based on law and fact, and that Ferro Union involved the interpretation of new and complex terms pursuant to the 1994 Uruguay Round Agreements Act.

---

[3]     For example, plaintiffs had asserted that Commerce improperly continued its review of Saha Thai after Saha Thai's request for termination.  The court held that Commerce had discretion to continue the review, and that no violation of Commerce's regulations had occurred.  Ferro Union, 44 F. Supp.2d at 1317.

The government bears the burden of showing that its position was substantially justified. <u>Inner Secrets/Secretly Yours, Inc. v. United States</u>, 20 CIT 210, 213, 916 F. Supp. 1258, 1261-62 (1996) (quotation omitted). The Supreme Court has clarified that "substantially" in this context does not mean "'justified to a high degree,' but rather 'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).

The fact that the party prevailed is not sufficient to show that the government's position was not substantially justified. <u>See</u> <u>Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States</u>, 837 F.2d 465, 467 (Fed. Cir. 1988) ("The mere fact that the United States lost the case does not show that its position in defending the case was not substantially justified.") (quotation omitted). As further stated by the Federal Circuit:

> The EAJA was not intended to be an automatic fee-shifting device . . . . The decision on an award of attorney fees is a judgment independent of the result on the merits, and is reached by examination of the government's position and conduct through the EAJA 'prism,' . . . not by redundantly applying whatever substantive rules governed the underlying case.

<u>Id.</u> at 467 (quotations omitted). Indeed, attorney's fees and other expenses "are generally awarded only where the

government offers 'no plausible defense, explanation, or substantiation for its action.'" Consolidated, 16 CIT at 696, 797 F. Supp. at 1011 (quotation omitted). Viewed in this light, Commerce's position at both the administrative level and in the litigation before this court was substantially justified.

In concluding that Saha Thai was affiliated with a variety of companies through familial ties, Commerce grounded its analysis in the statute and concluded that the companies were affiliates. See Final Results, 62 Fed. Reg. at 53,809-10 (analyzing definition of "affiliated persons," "family" and "control" pursuant to 19 U.S.C. § 1677(33)). Although the court found some of Commerce's descriptions of the family relations vague, Commerce further described these relationships on remand and properly found that the families controlled Saha Thai. Ferro Union, 1999 WL 825584, at *6 & n.14.

Commerce was applying new statutory terms at the time of the Final Results. When the agency is dealing with a new issue, the courts have recognized that the agency may be substantially justified in its position, even if that position is erroneous. See Consolidated, 16 CIT at 697, 797 F. Supp. at 1012 (Commerce substantially justified in addressing

matters pertaining to economy of People's Republic of China which "were not settled or fixed" and "Commerce [made] good faith attempts to address them."); see also Luciano, 837 F.2d at 467 (underlying case revoked antidumping duty order, but Commerce's position substantially justified in part because of "complexity, uniqueness, and newness" of issues). Here the court recognized that the full scope of the term "affiliated persons" pursuant to 19 U.S.C. § 1677(33) was "an admittedly complex, and as yet unexplained, concept." Ferro Union, 44 F. Supp.2d at 1327. The court upheld Commerce's interpretation of the term, but found that Commerce had unfairly required Saha Thai to apply this interpretation at the outset because Saha Thai did not have reason to foresee the full meaning of the term as interpreted by Commerce. Id. Nonetheless, it is not clear that Commerce should have recognized Saha Thai's lack of notice. Because of the new statute, neither party was certain of its duties. The court finds Commerce's proper interpretation of "affiliation" in this case was sufficient to render its actions substantially justified or otherwise to make the award of fees unjust.

Commerce also attempted to follow the framework of 19 U.S.C. § 1677e in applying total adverse facts available in concluding that Saha Thai had significantly impeded the

review.  Final Results, 62 Fed. Reg. at 53,809.  This conclusion is sufficient for an application of facts otherwise available.  See 19 U.S.C. § 1677e(a)(2)(C).  The flaw in Commerce's analysis was in failing to make the additional finding that Saha Thai had "failed to cooperate by not acting to the best of its ability" as required under 19 U.S.C. § 1677e(b) in order to draw an adverse inference.  Ferro Union, 44 F. Supp.2d at 1329-31 & n.44.

Commerce's method for selecting total adverse facts available pursuant to 19 U.S.C. § 1677e(b), however, also involved interpreting a new provision of the statute.  This court clarified in Borden that the analysis under the 1994 statute differs from prior law, and that Commerce must make a series of determinations before making an adverse inference.  Borden, 4 F. Supp.2d at 1246-47.  Borden, however, was issued in 1998, after Commerce had issued the Final Results in its administrative review of Saha Thai.  Commerce therefore did not have the benefit of the Borden analysis when it applied total adverse facts available to Saha Thai.  The government's judicial defense of Commerce's determination likewise should not be the basis for a fee award.  An agreed remand to resolve the more procedural issue would have wasted time and likely would not have led to plaintiffs' victory at that point.  That

is, had Commerce given adequate notice of its interpretation

of the statute, it likely would have been justified in

applying adverse facts after following the proper procedure.

Thus, because Commerce's action as to notice of its

interpretation of "family" was substantially justified within

the meaning of the EAJA, it would be unjust to award fees

based on this procedural error which would not have been the

cause of plaintiffs' success.[4]

Because it is denying any fee award, the court need not

decide whether Asoma's request for attorney's fees and

expenses was properly documented, pursuant to USCIT R. 68(b).

---

[4] Plaintiffs also assert that the application of the
29.89 percent margin from the Final Results was not
substantially justified. Because Commerce was not required to
reach the issue, the court never resolved whether this margin
would have been acceptable if total adverse facts were
warranted. That is, because plaintiffs were successful on
their other theories the issue of corroboration of the higher
margin was mooted. To resolve this issue the court would have
to direct Commerce to perform an analysis merely for the
purpose of resolving the attorney's fee issue. But a "request
for attorney's fees should not result in a second major
litigation." Naekel v. Department of Transp., FAA, 884 F.2d
1378, 1379 (Fed. Cir. 1989) (quoting Hensley v. Eckerhart, 461
U.S. 424, 437 (1983)). Further, it is unlikely that
plaintiffs would prevail in establishing lack of
justification. The corroboration issue also stems from the
new statute which had not been interpreted as to the relevant
point prior to the time of the court's first decision on the
merits here.

## Conclusion

Although plaintiffs were prevailing parties, Commerce's position was substantially justified. The court therefore denies the application for attorney's fees and expenses of the Asoma Corporation pursuant to the EAJA.

It is so ordered.


_____

Jane A. Restani
Judge


Dated: New York, New York

This 30th day of December 1999.