SLIP OP. 03-94

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: RICHARD K. EATON, JUDGE

_____
                                        :
AUTOMATIC PLASTIC MOLDING, INC.,        :
                                        :
                    PLAINTIFF,          :
                                        :
         v.                             :          COURT NO. 99-00365
                                        :
UNITED STATES,                          :
                                        :
                    DEFENDANT.          :
_____:

[Application for attorney's fees and expenses denied.]

Decided: July 28, 2003

*Law Office of George R. Tuttle, A P.C.* (*George R. Tuttle III* and *Matthew K. Nakachi*), and *Tonsing Law Offices* (*Michael J. Tonsing*), for Automatic Plastic Molding, Inc.

*Peter D. Keisler*, Assistant Attorney General, United States Department of Justice; *John J. Mahon*, Acting Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Mikki Graves Walser*); Office of the Assistant Chief Counsel, United States Bureau of Customs and Border Protection (*Beth C. Brotman*), of counsel, for Defendant.

OPINION

*EATON, Judge*: Before the court is the application of Automatic Plastic Molding, Inc. ("APM"),

for fees and expenses pursuant to USCIT Rule 68 and the Equal Access to Justice Act ("EAJA"),

28 U.S.C. § 2412 (2000). For the reasons set forth below, the court denies this application.

BACKGROUND

In the underlying action APM challenged the United States Customs Service's ("Customs")[1] classification of certain glass containers. After a three-day trial the court held for APM, and found that the merchandise was properly classifiable under subheading 7010.91.50 of the Harmonized Tariff Schedule of the United States ("HTSUS") as "Carboys, bottles, flasks, jars, pots, vials, ampoules and other containers, of glass, of a kind used for the conveyance or packing of goods." *See Automatic Plastic Molding, Inc. v. United States*, 26 CIT __, Slip Op. 02-120 (Oct. 5, 2002). Final judgment was entered in this matter on October 5, 2002, and Customs was ordered to "reliquidate the entries that are the subject of this action . . . and, as provided by law, refund with any interest any excess duties paid." *See* Judgment Order of Oct. 5, 2002. Following entry of final judgment, the United States ("Government"), on behalf of Customs, did not pursue an appeal. Thereafter, on January 2, 2003, APM submitted an "Application for Fees and Other Expenses Pursuant to the Equal Access to Justice Act" (the "Application"). By this Application APM asks this court to award it costs and expenses for the underlying action in the amount of $119,586.71. The Government actively opposes the Application.

DISCUSSION

The rules of this court permit the awarding of costs and fees. Pursuant to USCIT Rule 68, "[t]he court may award attorney's fees and expenses where authorized by law. Applications

---

[1]     Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. *See* Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. 108-32, at 4 (2003).

must be filed within 30 days after the date of entry by the court of a final judgment." USCIT R.

68(a).[2] An application for fees and expenses "shall contain a citation to the authority which

authorizes an award, and shall indicate the manner in which the prerequisites for an award have

been fulfilled." USCIT R. 68(b). Here, APM cites the EAJA as authority for such award.[3] As

---

[2]     APM alleges that the 30 day period for filing the Application did not start to run until the time for appeal expired. *See* Plaintiff's Statement in Supp. Application for Fees and Costs Under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("APM's Mem.") at 2–3 (citing *Former Employees of Shaw Pipe, Inc. v. United States Sec'y of Labor*, 22 CIT 430, 432, 9 F. Supp. 2d 713, 716 (1998)); *see Gavette v. Office of Pers. Mgmt.*, 808 F.2d 1456, 1459 (Fed. Cir. 1986) ("The party seeking an award under the EAJA must submit the application to the court within 30 days of the date when the judgment becomes 'final and not appealable.' Although the Federal Circuit decided Gavette's appeal on the merits on February 1, 1985, the time for filing a petition for certiorari did not expire until 90 days later. Gavette had an additional 30 days, or a total of 120 days from February 1, to file his application for fees and expenses." (footnotes omitted)). Here, APM alleges that the Application was timely filed as the Judgment Order "became final and not appealable, as a matter of law, . . . on December 3, 2002." APM's Mem. at 3. The Government does not contest the timely filing of the Application.

[3]     The relevant language of the EAJA provides:

(A) . . . [A] court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

(B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the

(continued...)

summarized by the Court of Appeals for the Federal Circuit "[t]he EAJA statute provides that a trial court must award attorney's fees where: (i) the claimant is a 'prevailing party'; (ii) the government's position was not substantially justified; (iii) no 'special circumstances make an award unjust'; and (iv) the fee application is timely submitted and supported by an itemized statement." *Libas, Ltd. v. United States*, 314 F.3d 1362, 1365 (Fed. Cir. 2003) (citing 28 U.S.C. § 2412(d)(1)(A)–(B); *INS v. Jean*, 496 U.S. 154, 158 (1990)).  By the Application, APM alleges that: (1) APM was the "prevailing party" in the underlying action; (2) APM meets the net worth requirement and submitted the appropriate supporting documentation; (3) no "special circumstances" exist that would make awarding fees and expenses unjust; and (4) the Government's litigation position at both the administrative and trial level lacked "substantial justification."  *See* APM's  Mem. at 4; *id.* at schedules A.1, A.2, B, D; *id.* at 9, 21.[4]  In response, the Government concedes that APM "was the prevailing party in this litigation and has met the net worth requirements and provide[d] an itemized statement of fees sought required by the Rules of this Court . . . ."  Def.'s Opp'n to Pl.'s Application for Attorney's Fees and Costs ("Def.'s Mem.") at 5–6 (footnote omitted).  In addition, the Government makes no argument that "special circumstances" existed in the underlying action such that an award of fees and expenses

---

[3](...continued)
> position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(A)–(B).

[4]      Citing *Traveler Trading Co. v. United States*, 13 CIT 308, 382, 713 F. Supp. 409, 411 (1989).

would be unjust.

Thus, as the parties agree that APM was the prevailing party and provided the requisite supporting documentation and, furthermore, there is no argument that "special circumstances" existed in the underlying litigation, the remaining question for the court is whether the Government's position was "substantially justified."

A.      *Substantially justified*

Pursuant to statute

> a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action . . . .
>
> The [applicant] shall . . . allege that the position of the United States was not substantially justified.  Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(A), (B).  Thus, the statute requires that the Government's position be substantially justified at both the administrative level and at trial.  *Am. Bayridge Corp. v. United States*, 24 CIT 9, 10, 86 F. Supp. 2d 1284, 1285 (2000) (citing *Covington v. Dep't of Health & Human Servs.*, 818 F.2d 838, 839 (Fed. Cir. 1987); *Traveler Trading*, 13 CIT at 381, 713 F. Supp. at 411)) ("If the court determines that the applicant prevailed, the government must demonstrate that its position, both at the agency level and throughout the litigation was substantially justified, or that special circumstances make an award unjust.").  APM contends

that "the Government needlessly continued this litigation after it knew or should have known that its position regarding the classification of the glass containers in question was not substantially justified." APM's Mem. at 6. In support of its position, APM states that "[a]dmittedly, the test for attorney fees and costs under the EAJA is not whether [a party] succeeded on the merits, but whether the government was *clearly* reasonable in asserting its position . . . in view of the law and the facts.'" *Id.* at 13 (emphasis and ellipsis in original) (citing *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*, 837 F.2d 465, 467 (Fed. Cir. 1988)).

The Government concedes that it "must demonstrate that its position, both at the agency level and throughout the litigation was substantially justified, or that special circumstances make an award unjust . . . ." Def.'s Mem. at 6 (citing 28 U.S.C. § 2412 (d)(1)(A); *Covington*, 818 F.2d at 839; *Am. Bayridge*, 24 CIT at 10, 86 F. Supp. 2d at 1285).

The Court of Appeals for the Federal Circuit has held that the government bears the burden of showing that its position was substantially justified under the EAJA. *Libas*, 314 F.3d at 1365 (citing *Neal & Co. v. United States*, 121 F.3d 683, 686 (Fed. Cir. 1997)) ("[T]he imperative language of [28 U.S.C.] § 2412(d)(1)(A), 'a court shall award,' requires that the government bears the burden of proving its position was substantially justified."); *see Inner Secrets/Secretly Yours, Inc. v. United States*, 20 CIT 210, 213, 916 F. Supp. 1258, 1261–62 (1996) (*quoting Traveler Trading*, 13 CIT at 381, 713 F. Supp. at 411) ("In this matter, the 'government bears the burden of establishing that its position was substantially justified or that special circumstances should preclude an award under the EAJA.'"). In determining what

constitutes substantial justification, the Supreme Court has defined the term to mean "'justified in substance or in the main' — that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see Owen v. United States*, 861 F.2d 1273, 1274 (Fed. Cir. 1988) (quoting *Pierce*, 487 U.S. at 565); *Urbano v. United States*, 15 CIT 639, 641, 779 F. Supp. 1398, 1401 (1991), *aff'd*, 985 F.2d 585 (1992) (citing *Pierce*, 487 U.S. at 565; *Owen*, 861 F.2d at 1274); *see also Kerin v. United States Postal Service*, 218 F.3d 185, 189 (2nd Cir. 2000) (Katzmann, J.) (citing *Pierce*, 487 U.S. at 563, 566) ("With respect to the second prong of this test, the government's position was 'substantially justified' if it had 'a reasonable basis both in law and in fact.' 'To be "substantially justified" means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve.'" (citations omitted)). In addition, "'substantial justification' requires that the Government show that it was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts. The Government must show that it has not 'persisted in pressing a tenuous factual or legal position, albeit one not wholly without foundation.'" *Gavette*, 808 F.2d at 1467 (emphasis in original) (citing *Schuenemeyer v. United States*, 776 F.2d 329, 330–33 (Fed. Cir. 1985); quoting *Gava v. United States*, 699 F.2d 1367, 1375) (Fed. Cir. 1983) (Baldwin, J., dissenting)). Thus, the court now turns to whether the Government has met its burden.

1.    *Customs's position at the administrative level was clearly reasonable*

APM first takes issue with the Government's position at the administrative level. APM argues that

> [d]uring the administrative proceeding below, Customs ignored critical evidence and gave selective and conclusory treatment to other evidence before it. As observed by this court in footnote 5 of its decision in the instant case, Customs failed to apply the relevant law in the administrative proceedings:
>
>> Here, Customs' determination [HQRL 962378] that the Merchandise is not classifiable under subheading 7010.90.50 is both selective and conclusory, and simply does not follow from the criteria set out in T.D. 96-7, *Carborundum*, and *Kraft*. . . .
>
> In short, this was not a "clearly reasonable" analysis, it was a selective and conclusory analysis.

APM's Mem. at 14 (bracketed material in text; emphases removed) (citing *Automatic Plastic Molding*, 26 CIT at __, Slip Op. 02-120 at 9 n.5); *see* T.D. 96-7; Tariff Classification of Imported Glassware, 61 Fed. Reg. 223 (Dep't Treasury Jan. 3. 1996) (change of practice); *Kraft, Inc. v. United States*, 16 CIT 483 (1992); *United States v. Carborundum Co.*, 536 F.2d 373 (C.C.P.A. 1976).[5] In support of its position, APM highlights several of the court's findings claiming that they demonstrate Customs "ignored important evidence regarding the lugs," "failed to account for other evidence as to the glass," and made "conclusory findings at the administrative level [that] lacked any explanation and were 'simply unconvincing.'" APM's Mem. at 14, 15. APM concludes that "[i]n short, Customs . . . followed the same pattern administratively as was observed in court. Its unsupported assertion was not only not a 'clearly reasonable' analysis, it

---

[5] The court notes that footnote five deals with the application of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Automatic Plastic Molding*, 26 CIT at __ n.5, Slip Op. 02-120 at 9 n.5 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); *Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354 (Fed. Cir. 2001)). The court found that HQRL 962378 was not sufficiently thorough to rate *Skidmore* deference. *Rocknell*, 267 F.3d 1357 (holding *Skidmore* deference is appropriate where Customs's classification decision revealed its thorough analysis).

was a conclusion supported by *no analysis*.  As such, it was clearly unreasonable and arbitrary."

*Id.* at 16 (emphasis in original).

In response, the Government argues that "based upon the evidence before it, Customs'

position was 'clearly reasonable' and, therefore, substantially justified during its consideration of

APM's protest."  Def.'s Mem. at 6–7.  In support, the Government contends that "[f]rom the

outset in its decision, this Court recognized that not all of the evidence presented to the Court

was raised before or considered by Customs."  *Id.* at 7 (citing *Automatic Plastic Molding*, 26 CIT

at __, Slip Op. 02-120 at 3–4).  The Government continues that

> [i]n addition to the testimony of APM's four witnesses, the Court
> had two samples of the imported jar and various other exhibits
> presented by APM from which the Court could ascertain the facts
> necessary to render its decision.  On the other hand, Customs had
> only pictorial representations of the imported jar and limited
> factual information presented by APM with which it could
> ascertain the facts necessary to render its decision.

*Id.* (citing APM's Protest, HQRL 962378, April 8, 1999).  The Government further states that

> [a]s clearly set forth in HQ 962378, in determining the proper
> classification of imported merchandise, Customs considered the
> terms of the competing headings, reviewed and applied the General
> Rules of Interpretation ("GRIs"), Additional U.S. Rules of
> Interpretation ("ARIs"), the Explanatory Notes to the competing
> provisions, lexicographic reference sources, prior judicial
> decisions, prior HQ rulings, and T.D. 96-7.  Indeed, although
> additionally considering the Explanatory Notes to the competing
> provisions and prior HQ ruling letters, Customs considered the
> very same sources as the Court.

*Id.* at 7–8 (footnote omitted).  The Government concludes that

> [i]nasmuch as Customs' position in HQ 962378 was based upon
> limited information provided by APM, a correct construction

> and/or interpretation of the terms of the competing headings, the
> Explanatory Notes, the GRIs, ARIs, and judicial decisions, and the
> correct application of the law to the facts before it at that time, it
> follows that Customs' position regarding APM's protest was
> clearly reasonable.

*Id.* at 9.

The court finds that the Government has adequately sustained its burden that Customs's

position at the administrative level was substantially justified. While APM notes that several of

Customs's arguments at the administrative level were found by this court to be insufficient at

trial, Customs nonetheless examined the evidence before it, applied what it considered to be the

appropriate legal standard, and provided an analysis based on the facts and law as it understood

them.[6] In addition, certain evidence that was before the court was not presented to Customs. For

---

[6]     A review of the Headquarters Ruling Letter issued in response to protest number
2809-98-100508 shows that, contrary to APM's assertion that Customs's conclusion that the
subject merchandise was properly classifiable under HTSUS subheading 7013 was supported by
no analysis, Customs did, indeed, acknowledge the factors set out in T.D. 96-7, *Kraft*, and
*Carbonundum* and applied those factors to the limited facts before it. *See* HQRL 962378.
Customs stated:

> The article appears to be manufactured by automatic machines
> from ordinary glass. It is similar in shape to an urn. It has a wide
> opening, moderate length neck, and is configured to hold a rubber
> lined, wooden lid. Because of the unusual and attractive shape, an
> ultimate purchaser's primary expectation would be to reuse the
> article after the conveyed or packed goods are used (note also that
> the article is configured for a wooden lid which allows for
> repetitive, extremely easy, opening and closing). We note that
> although the protestant states that the container is sold from the
> importer to a customer who fills it with Italian cookies, packing
> cookies for sale in glassware is relatively rare; cookie jars are
> principally used as storage articles in the home. There is evidence
> that container is emphasized over the goods packed in it, i.e.,

(continued...)

instance, the Government insists that "[n]o evidence that the jar was capable of being used in the

hot packing process was submitted to Customs by APM." Def.'s Mem. at 7 (emphasis removed)

(citing APM's Protest; HQRL 962378). Further, the Government maintains "[n]o evidence

regarding the principal use of the jar was provided by APM to Customs for its use in determining

the proper classification of the merchandise." *Id.* (emphasis removed). Thus, Customs reached

its position at the administrative level with only pictorial representations of the subject

merchandise and a limited factual record. As a result, Customs was in the position of applying

the criteria found in T.D. 96-7, *Kraft*, and *Carborundum*,[7] without the benefit of the evidence the

court would later have before it. Nothing has been presented to the court that would indicate that

Customs's application of the law to these limited facts was not "justified to a degree that would

satisfy a reasonable person." *Pierce*, 487 U.S. at 565. Indeed, an examination of the evidence

---

[6](...continued)
> molded glass handles and a unique, decorative shape, and the
> physical form of the article (see above) indicates that this is so.
> The cost of the cookie filled article ($16.00) supports the
> conclusion that the glass jar is the primary focus of the purchaser
> with the contents simply emphasizing a suggested use of the
> reusable jar. The criterion of commercial use to convey foodstuffs,
> etc., is addressed by the other criteria (see above and below).
> There is no evidence that the container is capable of being used in
> the hot packing process. The physical form of the articles (see
> above) indicates that rather than using the containers to pack and
> convey goods to a consumer who discards them after their initial
> use, the containers, and not their contents, are emphasized to
> customers. On the basis of these criteria, we conclude that these
> articles are not principally used for the conveyance or packing of
> goods.

*Id.*

[7]        *See Automatic Plastic Molding*, 26 CIT at __, Slip Op. 02-120 at 9 n.5

that was before Customs shows that it was susceptible to different interpretations by reasonable people. As such, Customs was clearly reasonable in maintaining its position at the administrative level and that it did not "press[] a tenuous position without factual or legal foundation." *Gavette*, 808 F.2d at 1467. Using this standard, the court finds that the Government has satisfied its burden of proof that Customs's position at the administrative level was substantially justified.

2.      *Customs's position at trial was clearly reasonable*

In addition to its arguments concerning Customs's actions at the administrative level, APM insists that the Government's litigation position was not substantially justified. APM claims that "the Government presented no evidence that seriously refuted *any* of the facts and supporting evidence made known to it by APM during the discovery process." APM's Mem. at 19 (emphasis in original). Furthermore, APM restates this court's finding that "[a]t trial, the Government made only a limited attempt to justify its classification of the Merchandise as 'Glassware of a kind used for table, kitchen . . . indoor decoration, or similar purposes' under subheading 7013.39.20. Rather, the Government focused its efforts on refuting Plaintiff's asserted classification." *Id.* at 18 (quoting *Automatic Plastic Molding*, 26 CIT at __, Slip Op. 02-120 at 11) (ellipsis in original).

The Government strongly contests APM's claim that its litigation position was not substantially justified and insists that its position at trial "was founded on a wide variety of legal and factual bases." Def.'s Mem. at 10. The Government maintains that its litigation position was "based upon a consideration of the class or kind of goods to which the imported articles

belong, the physical characteristics of these goods, and the subsequent uses to which the imported jars could be put." *Id.* at 11 n.3.

With respect to the Government's litigation position, APM's claim fails under all of the cited authority. Despite APM having prevailed at trial, and its arguments to the contrary notwithstanding, the Government was clearly reasonable in asserting its position with respect to the criteria found in T.D. 96-7. A reading of the opinion reveals that the court was required to weigh the evidence and make determinations about which reasonable persons might disagree. APM correctly states that the court relied on the factors found in T.D. 96-7 for a portion of its opinion and that in analyzing these factors it found that five of the seven factors supported APM's classification. For its part, though, the Government marshaled evidence to support its position. First, the Government presented witness testimony at trial. The Government's expert witness, Dr. Sher Paul Singh, a professor of packaging design and materials, testified that the subject merchandise "[did] not have the similarities of the of the types of jars that are used to commercially convey foodstuffs." Trial Tr. at 595:7–9. In addition, the National Import Specialist Associate and the Import Specialist of the Port of San Francisco testified that they examined jars similar to the subject merchandise that could be purchased from Pier 1, Target, JCPenney, Lechter's, and Cost Plus World Market and were sold empty as "storage jars." *See id.* at 483:15–490:4; *id.* at 517:12–527:20. While the court found Plaintiff's position to be more convincing based on the testimony of other witnesses, nothing presented by the Government in the way of testimony would lead to the conclusion that it was "pressing a tenuous factual or legal position, albeit one not wholly without foundation." *Gavette*, 808 F.2d at 1467. Indeed, the

witnesses testified with respect to matters about which reasonable people might disagree.

Second, at trial the Government submitted storage containers into evidence—Trial Exhibits P

and G—and noted their similarity to the subject merchandise in an effort to persuade the court

that the subject merchandise was properly classified under heading 7013 of the HTSUS.

Although the court distinguished the subject merchandise from Trial Exhibits P and G based on

their respective shapes and the quality of the glass used, *see Automatic Plastic Molding*, 26 CIT

at __, Slip Op. 02-120 at 6–7, the Government nevertheless presented a clearly reasonable—if

ultimately unconvincing—basis for Customs's position.  The Government also presented some

evidence that the subject merchandise: (1) did not come with a closure that would "provide the

seal integrity level required in conveying jars for food packaging," Trial Tr. at 596:5–6; (2) was

"significantly of a higher glass distribution and wall thickness than typical jars used for

conveying goods in the same volume," *id.* at 595:21–24; (3) was fifteen to twenty percent heavier

than jars commonly used for packaging, *id.* at 182:24–183:4; and (4) had handles which were "in

a shape and in a region which consumers normally do not use to pick [up] these type of

products," *id.* at 600:3–5.  Although APM demonstrated to the court that the subject merchandise

shared many of the characteristics of merchandise properly classified under heading 7010 of the

HTSUS, there was nothing about the Government's evidence with respect to these matters that

would suggest its position was not substantially justified, or that it was pressing a tenuous

position.  *Gavette*, 808 F.2d at 1467.  In addition, the court made findings relating to the

expectations of the ultimate purchaser based on secondary evidence rather than on direct

evidence.  *Automatic Plastic Molding*, 26 CIT at __, Slip Op. 02-120 at 13–14.  Finally, the

court's own observation of the merchandise weighed heavily it its decision.  For instance, in

reaching its decision the court was required to make findings with respect to what constituted a "large opening" and a "short neck." *Id.*, 26 CIT at __, Slip Op. 02-120 at 13. While APM did present credible evidence that successfully convinced the court that Customs erred in its classification, it cannot be said that the Government, on behalf of Customs, did not make out a substantial case or that its insistence on its position was not clearly reasonable.

CONCLUSION

As the Government's position in this action was clearly reasonable with respect both to the law and facts it relied on at both the administrative and trial levels, the court is persuaded that the Government was substantially justified in claiming that the subject merchandise was properly classified as "Glassware of a kind used for table, kitchen, . . . indoor decoration or similar purposes" under HTSUS subheading 7013.39.20. Therefore, APM's Application for attorney's fees and expenses is denied.

_____
Richard K. Eaton, Judge

Decided:        July 28, 2003
                New York, New York