**Slip Op. 04-52**

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| FORMER EMPLOYEES OF OXFORD AUTOMOTIVE U.A.W. LOCAL 2088 | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Court No. 01-00453 |
| v. | : | |
| | : | |
| THE UNITED STATES DEPARTMENT OF LABOR | : | |
| | : | |
| Defendant. | : | |

[Application for fees and other expenses denied.]

Dated:  May 18, 2004

Serko & Simon, LLP (Jerome Leonard Hanifin and Joel K. Simon) for plaintiffs.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Delfa Castillo), Jayant Reddy, Office of the Solicitor, Division of Employment & Training Legal Services, United States Department of Labor, of counsel, for defendant.

## OPINION

**RESTANI, Chief Judge:**

Before the court is plaintiffs' application for fees and other expenses pursuant to USCIT R. 54.1 and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2000). The application is made in connection with Former Employees of Oxford Auto. v. United States, No. 01-00453, Slip Op. 03-154 (Ct. Int'l Trade Nov. 25, 2003) ("Oxford II"), which sustained the United States Department of Labor's certification of plaintiffs as eligible to apply for North American Free Trade Agreement-Transitional Adjustment Assistance ("NAFTA-TAA"). For the reasons set forth below, the application is denied.

## BACKGROUND[1]

Plaintiffs, former employees of Oxford Automotive, Inc., sought NAFTA-TAA certification from the U.S. Department of Labor ("Labor" or "Government"). After Labor denied Plaintiffs' petition, and their request for reconsideration, Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance, 66 Fed. Reg 10,916, 10,917 (Dep't Labor 2001); Notice of Negative Determination Regarding Application for Reconsideration, 66 Fed. Reg. 23,732 (Dep't Labor 2001), Plaintiffs requested judicial review in this court. With Plaintiffs' consent and the court's approval, Labor conducted two more investigations on voluntary remand, both of which concluded in denials of certification. Notice of Negative Determination on Reconsideration on Remand, PAR2 at 4–6; Notice of Negative Determination on Reconsideration on Remand, 67 Fed. Reg. 70,464 (Dep't

---

[1] Although the facts relevant to this matter will be discussed, the court assumes familiarity with its earlier opinion, Former Employees of Oxford Auto. v. United States, No. 01-00453, Slip Op. 03-129 (Ct. Int'l Trade Oct. 2, 2003) ("Oxford I").

Labor 2002). After reviewing those investigations, the court again remanded the case to Labor with instructions to comply with the applicable statute and to consider all relevant evidence. Oxford I, Slip Op. at 26. On this court-ordered remand, Labor followed the court's instructions, reversed its former position, and determined that Plaintiffs were eligible for NAFTA-TAA certification. Notice of Revised Determination on Remand, 68 Fed. Reg. 66,499 (Dep't Labor 2003). This revised determination was sustained by the court. Oxford II. Plaintiffs now ask for fees and other expenses in the amount of $95,779.72.

## DISCUSSION

### I. The EAJA

Pursuant to court rules, attorney fees and expenses may be awarded "where authorized by law." USCIT R. 54.1(a). Here, Plaintiffs cite the EAJA as authority for such an award. The EAJA allows those who prevail against the government in certain cases, to an award of fees and expenses. Ferro Union, Inc. v. United States, 23 CIT 1069, 1070 (1999). It is a waiver of sovereign immunity which must be strictly construed. Am. Bayridge Corp. v. United States, 24 CIT 9, 11, 86 F. Supp. 2d 1284, 1285 (2000).

Under the EAJA, fees and expenses must be awarded where: (i) the claimant is a "prevailing party;"[2] (ii) the government's position was not substantially justified; (iii) no "special circumstances make an award unjust;" and (iv) the fee application is timely submitted and supported by an itemized statement. Libas, Ltd. v. United States, 314 F.3d 1362, 1365 (Fed.

---

[2] Under 28 U.S.C. § 2412(d)(2)(B), "party" means an individual whose net worth did not exceed $ 2,000,000 at the time the civil action was filed. Because Plaintiffs attach evidence that the primary plaintiff's net worth did not exceed this amount at the time this action was filed, this requirement is met.

Cir. 2003) (citing 28 U.S.C. § 2412(d)(1)(A)–(B); INS v. Jean, 496 U.S. 154, 158 (1990)). In this case, the government does not dispute that Plaintiffs were the prevailing party, that their fee application was timely filed or adequately supported, or that special circumstances make an award unjust. The issue therefore is whether the Government's position was substantially justified.

## II. Substantial Justification

The phrase "substantial justification" means "'justified in substance or in the main' - - that is, justified to a degree that could satisfy a reasonable person. That is no different from [a] 'reasonable basis both in law and fact' . . ." Pierce v. Underwood, 487 U.S. 552, 565 (1988).

The fact that a party prevailed is not sufficient to show that the government's position was not substantially justified. Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States, 837 F.2d 465, 467 (Fed. Cir. 1988). The Federal Circuit further explained:

> The EAJA was not intended to be an automatic fee-shifting device . . . . The decision on an award of attorney fees is a judgment independent of the result on the merits, and is reached by examination of the government's position and conduct through the EAJA 'prism,' . . . not by redundantly applying whatever substantive rules governed the underlying case.

Id. (quotes and cites omitted). The government must show, however, that it has not "persisted in pressing a tenuous factual or legal position, albeit one not wholly without foundation." Gavette v. Office of Pers. Mgmt., 808 F.2d 1456, 1467 (Fed. Cir. 1986). It must show that its overall position, including its position at the administrative level, had a reasonable basis in both law and fact. Chiu v. United States, 948 F.2d 711, 714–15 (Fed. Cir. 1991).

In this case, Labor's overall position is related to its investigations conducted at the administrative level and during litigation. Therefore, the court considers Labor's position with

respect to these investigations.  See id. at 715 n.4 (noting that "[i]t is for the trial court to weigh

each position taken and conclude which way the scale tips").  In so doing, the court is satisfied

that Labor's position—that Plaintiffs were not eligible for NAFTA-TAA certification—was

substantially justified at all levels, and was grounded in law and fact.

## A.  Labor's Position at the Administrative Level was Substantially Justified

At the administrative level, Labor believed that there had not been a shift in production

from Oxford's Argos, Indiana facility ("Argos facility") to Mexico because the press lines

transferred there were idle, the primary customer[3] transferred production of the article formerly

produced on those press lines to other U.S. facilities, and Oxford had not shifted production of

any articles from the Argos facility to Mexico.  Although Plaintiffs argue that Labor's failure to

identify the articles Oxford was producing in Mexico renders its position baseless, the court finds

that Labor's position had a reasonable foundation in law and fact.

Under NAFTA-TAA law, Labor is required to determine whether:

> there has been a shift in production by such workers' firm or subdivision to
> Mexico . . . of articles like or directly competitive with articles which are
> produced by the firm or subdivision.

19 U.S.C. § 2331(a)(1)(B) (2000).  Accordingly, Labor investigated whether there had been a

shift in production from the Argos facility to Mexico.  Specifically, Labor investigated

allegations in Plaintiffs petition that Oxford had transferred press lines from the Argos facility to

Mexico.  CAR1 at 2–4.  Labor's investigation into the transferred press lines, for evidence of a

---

[3] The Argos facility's primary customer was responsible for purchasing the majority of articles produced at the facility.  CAR1 at 13, CAR3 at 8.

statutory shift in production, was reasonable not only because Plaintiffs petition alleged that press lines had been moved to Mexico, but also because the court has noted that "the amounts and types of equipment . . . moved from the [domestic] facility to Mexico . . . is relevant in evaluating whether a shift in production may have occurred . . ." Former Employees of Champion Aviation Prods. v. Herman, 23 CIT 349, 354 (1999).

In investigating whether a shift in production had occurred, Labor first questioned Oxford, which stated that although it had moved several press lines to Mexico, the equipment was idle. CAR1 at 17. This statement by Oxford was not contradicted by other evidence.[4] In fact, it was reinforced by the primary customer, which informed Labor that production of the article formerly manufactured on those press lines was transferred not to Mexico, but to other domestic locations. CAR1 at 16. In addition, the state agency's preliminary findings contained additional evidence to support Labor's position. Specifically, those findings indicated that Oxford had not shifted production of any articles from the Argos facility to Mexico during the relevant time period. CAR1 at 13. Thus, Labor believed that it had accounted for all of the articles formerly produced at the Argos facility, and determined that Oxford had not shifted production of any of those articles to Mexico.[5] Labor therefore had substantial evidence, which it "deemed reliable and authoritative," to support its position that a statutory shift in production had

---

[4] Thus, Labor had no reason to doubt this statement. See Former Employees of Barry Callebaut v. Chao, 357 F.3d 1377, 1383 (Fed. Cir. 2004) (holding that Labor's findings were supported by substantial evidence including statements from worker's firm which Labor "deemed creditworthy and that was not contradicted by any other evidence").

[5] This shows that in the context of this case, Labor interpreted "like or directly competitive articles" as the equivalent of "exact." As discussed below, this interpretation, although erroneous, was not without a rational basis. See discussion infra at B.1.

not occurred.  Inner Secrets/Secretly Yours, Inc. v. United States, 20 CIT 210, 214, 916 F. Supp

1258, 1263 (1996).

Despite the fact that it did not identify the articles produced by Oxford in Mexico,

Labor's overall position was not without a rational basis in law and fact.  See id., at 214–15

("Plaintiff's disagreement with the Government's position does not render the contrary position

baseless.").  Indeed, Labor "examined the evidence before it, applied what it considered to be the

appropriate legal standard, and provided an analysis based on the facts and law as it understood

them."  Automatic Plastic Molding, Inc. v. United States, 276 F. Supp. 2d 1362, 1368 (Ct. Int'l

Trade 2003).  Thus, its position at the administrative level was substantially justified.

**B. Labor's Position in Litigation was Substantially Justified**

After Plaintiffs sought judicial review, Labor requested and was granted two voluntary

remands.[6]   During its second voluntary remand investigation, Labor confirmed that the press

lines transferred to Mexico remained idle, and that all articles formerly produced at the Argos

facility were subsequently produced at other domestic facilities.  CAR3 at 7–8, 55.  With regard

to this investigation, the court held that Labor's (1) focus on the scope of articles produced at the

---

[6] During its first voluntary remand, Labor investigated whether Oxford had imported side panels from Mexico during the relevant time period.  Under 19 U.S.C. § 2331(a)(1)(A), displaced workers are eligible for NAFTA-TAA certification if their firm's increased imports from Mexico contributed importantly to their layoffs.  Because Plaintiffs' petition and information from the state agency suggested that Oxford may be importing like or directly competitive articles from Mexico, CAR1 at 2, 11, Labor investigated whether Plaintiffs were eligible for certification under § 2331(a)(1)(A).  Although Plaintiffs later clarified that they were requesting certification only under § 2331(a)(1)(B), in connection with Oxford's alleged shift in production to Mexico, Labor was justified at that point in investigating Oxford's imports.

Argos facility was too narrow, and (2) refusal to consider extra-record evidence was arbitrary and capricious. Oxford I, Slip Op. at 10. These actions nonetheless had rational bases in law and fact.

### 1. Labor's Narrow Focus on the Scope of Articles Produced at the Argos Facility had a Rational Basis

The "article scope" of Labor's investigation was car parts for specific models. See id. at 14 n.10. The court held that Labor must widen this scope in order to properly conduct the statutory "like or directly competitive" analysis, which does not mean "exact." See id. at 15 n.12 (noting that in the automobile industry, models change every year, thus "[b]y narrowing the articles produced by Plaintiffs at the Argos facility down to a specific automobile part and model . . . Labor essentially precluded the possibility of identifying a 'like or directly competitive' article produced in Mexico"). Nonetheless, Labor's narrow focus had a rational basis.

As discussed above, the NAFTA-TAA statute directs Labor to focus on the "articles" produced by the subject firm and determine whether they are "like or directly competitive." 19 U.S.C. § 2331(a)(1)(B). The court has interpreted "like or directly competitive articles" as those that are "interchangeable with or substitutable for" others. Int'l Bhd. of Elec. Workers, Local 1160 v. Donovan, 10 CIT 524, 527, 642 F. Supp. 1183, 1186 (1986). In the context of the automobile parts production industry, however, this phrase had not received prior construction by the court. Cf. Gropper v. Donovan, 6 CIT 103, 104, 569 F. Supp. 883, 884 (1983) (evaluating whether articles are like or directly competitive in textile manufacturing process); United Shoe Workers of Am. v. Bedell, 506 F.2d 174, 186–87 (D.C. Cir. 1974) (determining whether articles are like or directly competitive in shoe manufacturing context). Labor was therefore without

judicial guidance in determining the proper article scope of its investigation.[7] Because courts have held that "government agencies may be substantially justified in their actions, even if erroneous, if they are dealing with previously unaddressed issues," Labor's narrow focus on the scope of articles produced at the Argos facility does not render its position without legal justification. See Consol. Int'l Auto. v. United States, 16 CIT 692, 697, 797 F. Supp. 1007, 1012 (1992) (holding that Commerce was substantially justified in addressing matters regarding economy of PRC which "were not settled or fixed"); Luciano, 837 F.2d at 467 (holding that Commerce's position was substantially justified in part because of "complexity, uniqueness, and newness" of issues).

Moreover, Labor's narrow focus reflects the evidence it received from Oxford and the primary customer. Oxford, for example, informed Labor that the articles it produced were specific model parts. CAR1 at 13–15. Similarly, the primary customer was unable to respond to Labor's inquires regarding the articles it purchased without referencing a list of "specific part numbers." CAR3 at 2, 5, 55. Thus, considering that the law had not been applied in this context, and that industry participants spoke in terms of specific car model parts, Labor's narrow focus was not unreasonable.

### 2. Labor's Refusal to Consider Extra-Record Information had a Rational Basis

Labor's refusal to consider Plaintiffs' Motion exhibits, one of which suggested that Oxford may be producing like or directly competitive articles in Mexico, was held by the court to

---

[7] Without judicial guidance, it was reasonable for Labor to narrowly focus on car parts adapted for specific models, and reason that they are not "interchangeable with or substitutable for" anything but the same car part.

be arbitrary and capricious. However, "arbitrary and capricious conduct is not per se unreasonable." Andrew v. Bowen, 837 F.2d 875, 878 (9th Cir. 1988); see also F.J. Vollmer Co. v. Magaw, 102 F.3d 591, 595 (D.C. Cir. 1996) (quotes and cites omitted) (finding that "a determination that an agency acted arbitrarily and capriciously because it failed to . . . consider some relevant factor in reaching a decision may not warrant a finding that [the] agency's action lacked substantial justification"). In context here, and in view of the court's decision in Part B.1 above, Labor's arbitrary and capricious conduct is not so without foundation as to render Labor's conduct without support in law and fact.

Under Labor regulations, petitioners requesting reconsideration are instructed to "specifically set forth" in their application, the facts or law in support of their allegations in order for Labor to investigate and respond appropriately. 29 C.F.R. § 90.18(b)–(c). In this case, although Plaintiffs' exhibits were attached to their motion, they were not included in their application for reconsideration, as required by regulation. Therefore, Labor did not consider the information in its investigation or address it in its reconsideration determination. While at that stage of the litigation Labor should have considered the exhibits, Labor has presented a regulatory basis for its refusal to consider this extra-record information.

In sum, Labor's narrow focus on the scope of articles produced at the Argos facility, and its refusal to consider extra-record information, although held by the court to be erroneous, were nonetheless not without reasonable support in law and fact. Thus, Labor did not "press[] a tenuous position . . . without foundation," and its overall position during litigation was substantially justified. Gavette, 808 F.2d at 1467.

**CONCLUSION**

Labor's denial of Plaintiffs' NAFTA-TAA certification stemmed from a combination of problems, including its inexact understanding of the statutory and regulatory law at issue, a formulaic investigation, the novelty of the case, and narrow responses by Oxford and the primary customer.  Nonetheless, each of the steps taken by Labor, was not without legal and factual support.  Thus, Labor has shown that its position was substantially justified.  Accordingly, Plaintiffs' application for fees and other expenses pursuant to the EAJA is denied.


                                                /s/ Jane A. Restani
                                                Jane A. Restani
                                                Chief Judge


Dated:  New York, New York
        This 18th day of May, 2004